STATE OF MAINE
WALDO, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-15-4

| | | |
|---|---|---|
| DENNIS PICARD, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | **COMPLAINT** |
| v. | ) | RULE 80B REVIEW OF |
| | ) | GOVERNMENTAL ACTION |
| | ) | |
| COUNTY OF KENNEBEC; KENNEBEC | ) | AND |
| COUNTY SHERIFF'S OFFICE; | ) | |
| | ) | INDEPENDENT CAUSES OF |
| | ) | ACTION FOR DAMAGES AND |
| | ) | INJUNCTIVE RELIEF |
|     Defendants. | ) | |
| | ) | |

NOW COMES Plaintiff, Dennis Picard, by and through his undersigned attorney, and pursuant to Rule 80B of the Maine Rules of Civil Procedure, seeks review of certain governmental action by Kennebec County and Kennebec County Sheriff's Department (hereinafter "the County") and also alleges independent causes of action as follows:

### INTRODUCTION

Plaintiff Dennis Picard brings this complaint against Defendants to secure relief, legal and equitable, for wrongful termination, without just cause or constitutional procedural due process as required by the 14th Amendment to the United States Constitution, from his position as Captain of the Kennebec County Sheriff's Department, in violation of 30-A M.R.S. §§ 381 and 2701, and 42 U.S.C. § 1983. In addition, as set forth below, Defendants terminated Plaintiff, in whole or in part, in retaliation for engaging in political speech and/or for his association with his spouse, Sharon Picard,

REC'D & FILED
JUL 07 2015
WALDO -

COMPLAINT -- 1

who engaged in political speech protected by the First Amendment to the United States Constitution.

Plaintiff also brings an action for review pursuant to Rule 80B of Maine's Rules of Civil Procedure.

Plaintiff requests a trial by jury as to all issues.

## PARTIES AND JURISDICTION

1. Plaintiff Dennis Picard is a resident of the Town of Troy, County of Waldo, State of Maine.

2. Defendant County of Kennebec is a duly organized entity of local government under Maine law.

3. Defendant Kennebec County Sheriff's Office is a duly organized entity of local government under Maine law and Kennebec County code or ordinance.

## JURISDICTION AND VENUE

4. Because this action is brought under the laws of the State of Maine and because Plaintiff resides in Waldo County, jurisdiction and venue in the Waldo County Superior Court are proper pursuant to 14 M.R.S.A. § 501.

5. Jurisdiction is conferred upon this Court by Rule 80B of the Maine Rules of Civil Procedure and 5 M.R.S. § 11001 et. seq.

## FACTUAL ALLEGATIONS

6. Plaintiff Dennis Picard was employed with the Kennebec County Sheriff's Office (hereinafter "KCSO") from July 15, 2013, until he was terminated on November 21, 2014.

7. He worked as KCSO's Assistant Jail Administrator Lieutenant until on or about November 11, 2013, when he was promoted to Captain.

8. Until his termination, Mr. Picard served as KCSO's Captain, reporting to Chief Deputy Ryan Reardon, who reported to the Sheriff, Randall Liberty.

9. Mr. Picard has over 20 years of experience in law enforcement and has worked for three different law enforcement agencies during his career, including the KCSO.

10. Mr. Picard was at all material times herein a public municipal employee with a protected property interest in continued employment.

11. Mr. Picard met or exceeded performance expectations at all times during his employment with the KCSO.

12. In 2014, Mr. Picard and his spouse, Sharon Picard, supported their friend Kris McKenna in his political campaign for Sheriff in the neighboring County of Somerset, against Dale Lancaster, who was Somerset County's Chief Deputy.

13. Sheriff Liberty encouraged and supported Kris McKenna in his political campaign against Dale Lancaster.

14. On or about March 11, 2014, Sheriff Liberty met with Mr. McKenna in his office during working hours along with Mr. Picard regarding Mr. McKenna's prospective campaign.

15. During the meeting on March 11, 2014, Sheriff Liberty suggested to Mr. McKenna and Mr. Picard that consideration should be given to filing a Hatch Act complaint against Dale Lancaster.

16. At various times between the March 11, 2014 meeting and October 2014, Sheriff Liberty spoke with Mr. Picard, at KCSO on work time, about Mr. McKenna's campaign for Sheriff.

17. During Sheriff Liberty's discussions with Mr. Picard regarding Mr. McKenna's political campaign, he told Mr. Picard that a Hatch Act complaint should be filed against Dale Lancaster and shared with the media anonymously.

18. On or about August 4, 2014, Sharon Picard, filed a Hatch Act complaint with the United States Office of Special Counsel alleging that Dale Lancaster was using his official authority while conducting his campaign for Sheriff, including *inter alia,* wearing his uniform while campaigning and using his county vehicle for campaign events.

19. Sharon Picard also sent notice of the Hatch Act complaint against Dale Lancaster to Maine newspapers and television stations. To remain anonymous, she used the pseudonym Beth Downs, a name she previously used when commenting in public on-line forums regarding news articles, in order to freely express her opinions without fear of retribution.

20. On or about October 21, 2014, a reporter from the Kennebec Journal contacted and spoke with Mr. Picard at his home regarding the Hatch Act complaint filed by his spouse.

21. On or about October 21, 2014, following contact by the reporter, Mr. Picard notified Chief Deputy Reardon and Sheriff Liberty that he believed that a local news reporter was going to run an article in the Kennebec Journal regarding a Hatch Act complaint made by his spouse against Dale Lancaster.

22. On or about October 23, 2014, the Kennebec Journal printed an article about the Hatch Act complaint filed by Mr. Picard's wife and highlighting that Mr. Picard was a Captain at the KCSO.

23. The local reporter asked Mr. Picard about the Hatch Act complaint and he was quoted as saying: "Everyone knows that I am friends with Kris and have been for 15 years. . .We went to the academy together. I helped recruit him to Waterville from Somerset (Sheriff's office). I have attended numerous events with Kris in my off hours. I also work closely with Dale (Lancaster), and we are very much on the same team."

24. Mr. Picard also was quoted in the news article as saying that his wife does not "seek permission or require guidance" from him and that he supports this "powerful feminist trait" in his wife of more than 20 years.

25. On or about October 24, 2014, Mr. Picard was placed on administrative leave pending an investigation into an alleged "failure to follow directive" of Chief Deputy Reardon to cancel his attendance at an upcoming FBI Law Enforcement Executive Development Association ("LEEDA") training in New Hampshire scheduled for the week of October 27, 28 and 29, 2014.

26. The Sheriff's Office had signed Mr. Picard up for the LEEDA training in July 2014, with authorization from Sheriff Liberty.

27. On or about October 2, 2014, Chief Deputy Reardon had developed a work plan for Mr. Picard with regard to managing the law enforcement personnel. Specifically, he directed Mr. Picard to spend 4-weeks doing ride-alongs with

patrol deputies to get to know his staff and learn more about the County geography, so that he could better supervise their division.

28. If Mr. Picard worked his regular schedule, he would not have been able to complete the ride-alongs with the patrol deputies and attend the LEEDA training, however, he had discretion in setting his work hours.

29. In order to comply with Chief Deputy Reardon's directive concerning the ride-alongs with the patrol deputies, and also attend the LEEDA training, Mr. Picard shifted his schedule so that he could attend the conference from Monday to Thursday morning and then work the second shift with the patrol deputies from Thursday through Sunday.

30. No one at the KCSO directed Mr. Picard not to attend the LEEDA training.

31. On or about October 27, 2014, Chief Deputy Reardon emailed Mr. Picard a series of written questions regarding the LEEDA training course, as well as questions regarding alleged use of County equipment for political activity for Mr. McKenna's Sheriff campaign. Mr. Picard promptly responded.

32. Defendants then placed Sgt. Alfred Morin, Office of Professional Review, in charge of the internal affairs investigation of Mr. Picard, and added additional allegations against him.

33. Sgt. Morin was biased against Mr. Picard and he failed to conduct a fair and impartial investigation.

34. Several months before Sgt. Morin was placed in charge of investigating Mr. Picard, Mr. Picard witnessed him making a sexually graphic comment to a female employee.

35. After reporting Sgt. Morin's conduct to Chief Deputy Reardon, Mr. Picard met
    with Sgt. Morin to express his opposition to sexual harassment of women in the
    workplace.

36. Sgt. Morin walked out of the meeting with Mr. Picard in anger, refused to take a
    copy of the sexual harassment policies that Mr. Picard offered him, and stated that
    he still thought his sexually graphic statement was funny.

37. Following Mr. Picard's opposition to Sgt. Morin's conduct that he reasonably
    believed violated sexual harassment laws, Sgt. Morin's demeanor towards Mr.
    Picard became negative and dismissive.

38. Despite the fact that Sgt. Morin had an obvious bias against Mr. Picard,
    Defendants placed Sgt. Morin in charge of investigating Mr. Picard and entrusted
    him with making findings and recommendations for disciplinary action.

39. In the course of his investigation, Sgt. Morin made an audio recording of his
    interviews with witnesses, including Mr. Picard. He also prepared written
    summaries of his interviews.

40. Sgt. Morin recommended to Chief Deputy Reardon and Sheriff Liberty that Mr.
    Picard's employment be terminated.

41. Sgt. Morin conducted a pre-termination hearing for Mr. Picard. No one else on
    behalf of the County or the Sheriff's Office attended the pre-termination hearing.

42. Upon information and belief, Chief Deputy Reardon and Sheriff Liberty relied
    upon Sgt. Morin's representations in his interview summaries and oral
    descriptions in reaching the decision to terminate Mr. Picard.

43. Upon information and belief, neither Chief Deputy Reardon nor Sheriff Liberty listened to the audio recordings of Sgt. Morin's witness interviews.

44. On or about November 19, 2014, Sheriff Liberty issued a letter, authored by Chief Deputy Reardon, terminating Mr. Picard.

45. The primary reason for the termination was based on Sgt. Morin's representation that Mr. Picard lied during the investigation by failing to disclose that he had telephone calls with Mr. McKenna regarding his political campaign on work time.

46. Mr. Picard did not lie during the investigation. Prior to his interview, he disclosed in answers to written questions that he made some calls to Mr. McKenna regarding his political campaign.

47. In addition, the audio recording of Sgt. Morin's interview of Mr. Picard confirms that Mr. Picard did not lie during the investigation; Sgt. Morin's written summary of the interview on this point directly conflicts with the audio recorded statements.

48. The termination letter issued to Mr. Picard also cited other lesser alleged infractions, none of which constitute cause for termination.

49. One of the reasons Defendants asserted as a basis for the termination was the local media reporting about the Hatch Act complaint filed by Mr. Picard's wife and for Mr. Picard's statements to the media about that complaint.

50. The other infractions identified in Mr. Picard's termination letter would not have supported immediate termination because they were without merit and/or because other KCSO personnel engaged in similar or worse conduct and were not terminated.

51. The infractions alleged against Mr. Picard as the basis for his termination that are not overtly based on First Amendment protected speech, are pretext for retaliation in violation of Mr. Picard's rights of association and free speech afforded to him by the First Amendment to the United States Constitution.

52. Sheriff Liberty was the final decision maker for the KCSO concerning Mr. Picard's termination from employment and he had the final policymaking authority for Kennebec County concerning such decisions for the KCSO.

53. It was the custom of KCSO and Kennebec County that Sheriff Liberty had final policymaking authority for Kennebec County concerning termination of a Captain's employment, and he had the final policymaking authority for the County concerning such decisions.

54. Mr. Picard timely appealed the termination and requested a post-termination hearing before the Kennebec County Commissioners, pursuant to Section VI of policy 12-50 in Kennebec County Administrative Procedures.

55. Before a post-termination hearing before the Kennebec County Commissioners was held, Mr. Picard's attorney negotiated with Kennebec County's attorney a settlement whereby Mr. Picard would be reemployed by the KCSO as a Deputy Marshall in Augusta and Waterville starting in late December 2014, which came with a substantial pay cut from his position as KCSO Captain.

56. The agreement was that he would work as a part-time employee without benefits until March 2015, at which time he would become full-time Deputy Marshall in March 2015, and his sick time and retirement benefits would be reinstated up to his full time status.

57. In exchange for being reinstated, Mr. Picard agreed to forego his appeal to the Kennebec County Commissioners and resign his employment as Captain of the KCSO, and to make no comments to the media about the settlement.

58. In March 2015, Defendants breached a material term of the agreement by failing to act: Defendants did not make Mr. Picard a full time employee with sick time and retirement benefits reinstated up to his full time status.

59. On or about April 22, 2015, based on Defendants' failure to act in material breach of the agreement, Mr. Picard requested that his resignation as Captain of the KCSO be rescinded and he requested a post-termination hearing before the Kennebec County Commissioners, pursuant to Section VI of policy 12-50 in Kennebec County Administrative Procedures.

60. On or about June 9, 2015, Defendants, through their counsel, affirmatively stated that they would not accept Mr. Picard's resignation rescission or his request for a post-termination hearing.

61. As a result of Defendants' actions and omissions, Mr. Picard suffered economic damages that injured him and his family who depends on him.

62. As a result of Defendants' actions and omissions, Mr. Picard suffered damages including but not limited to lost wages and benefits, emotional distress, humiliation, and loss of enjoyment of life.

63. As a result of Defendants' actions and omissions, Mr. Picard suffered harm to his professional reputation and career in law enforcement.

64. Defendants' false assertions that Mr. Picard lied during an internal affairs investigation have caused foreseeable harm to Mr. Picard's beyond the loss of

employment with Defendants, as Defendants' knew it would end Mr. Picard's

career in law enforcement.

**COUNT I**
**M. R. Civ. P. 80B (Review of Governmental Action)**

65. The allegations in paragraphs 1-64 are realleged and incorporated by reference.

66. Plaintiff requests review of certain governmental actions and inactions of the

County of Kennebec and the Kennebec County Sheriff's Office, by and through

its County Commissioners, its Sheriff, its Chief Deputy, and its Internal Affairs

Sergeant, including the following:

> A.  Termination without cause as required by 31-A M.R.S. §§ 381 and
>     2701, based upon:
>     i.   The provably false and bad faith assertions that Mr. Picard lied
>          during the internal affairs investigation; and
>     ii.  Allegations of infractions that are unsupported by the evidence;
>     iii. Allegations of minor infractions that do not amount to "cause" for
>          termination.
>
> B.  Material breach of an agreement by the County's inaction in March
> 2015, that caused Plaintiff to resign and forego his post-termination hearing
> before the Kennebec County Commissioners;
>
> C.  The June 9, 2015 denial of Plaintiff's request to rescind his
> resignation due to the County's material breach of the agreement so that he could
> have a post-termination hearing before the County Commissioners.

67. Plaintiff has been aggrieved by Kennebec County's official actions and inactions:

he has sustained pecuniary and non-pecuniary damages as a direct and proximate

result of Kennebec County's actions and inactions, including but not limited to a

loss of a recognized property right to gainful employment, back wages, continued

health and retirement benefits, loss of future employment opportunities, harm to

professional reputation, damage to his career in law enforcement, emotional and

financial distress, and unnecessary public humiliation based on false and

misleading information proffered by municipal officials.

WHEREFORE, based on all of the foregoing, Plaintiff brings this timely

complaint for review pursuant to M. R. Civ. P. 80B, and seeks all relief to which he is

entitled, including:

A.     An Order declaring that the County's actions violate Maine law,
including but not limited to 30-A M.R.S. §§ 381 and 2701;

B.     An Order reinstating Petitioner to his former position as Captain of
the Kennebec County Sheriff's Office, with a corresponding order of back pay
and reinstatement of all benefits to which he is entitled; and

C.     Any other relief that the Court deems just and proper.

### COUNT II
### Violation of Constitutional Due Process Rights
### 42 U.S.C. § 1983

68. The allegations in paragraphs 1-67 are realleged and incorporated by reference.

69. By virtue of the foregoing, the Defendants, while acting under color of state law,

deprived Plaintiff of his property interest in his employment as Captain of the

Sheriff's Office, pursuant to 30-A M.R.S. §§ 381 and 2701, without adequate

procedural due process afforded by the Fourteenth Amendment to the United

States Constitution, in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff requests the following relief:

A. Enter judgment in Plaintiff's favor;

B. Enter declaratory relief that Defendants, while acting under color of state law,

violated Plaintiff's constitutional and statutory civil rights;

C. Enter injunctive relief ordering Defendants to reinstate Plaintiff to his original

employment position;

D. Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon and reinstatement, or, in lieu thereof, front pay for future lost wages and benefits;

E. Award compensatory in amounts to be determined at trial and prejudgment interest thereon;

F. Award Plaintiff his full costs, including reasonably attorney's fees and expert fees; and

G. Award such further relief as the Court deems appropriate.

### COUNT III
### Violation of Constitutional First Amendment Rights

70. The allegations in paragraphs 1-69 are realleged and incorporated by reference.

71. By virtue of the foregoing, the Defendants, while acting under color of state law, wrongfully terminated Plaintiff in retaliation for exercising his constitutional rights of free association and free speech guaranteed by the First Amendment to the United States Constitution.

72. As a result of Defendants' conduct, the Plaintiff has suffered and are continuing to suffer professional and personal injuries, including lost wages and benefits, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, injury to career, chilling of constitutional and free speech rights, deprivation of professional and career opportunities, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff requests the following relief:

A. Enter judgment in Plaintiff's favor;

B. Enter declaratory relief that Defendants, while acting under color of state law, violated Plaintiff's constitutional and statutory civil rights, including Plaintiff's right to free association and free speech;

C. Enter injunctive relief ordering Defendants to reinstate Plaintiff to his original employment position;

D. Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon and reinstatement, or, in lieu thereof, front pay for future lost wages and benefits;

E. Award compensatory in amounts to be determined at trial and prejudgment interest thereon;

F. Award Plaintiff his full costs, including reasonably attorney's fees and expert fees; and

G. Award such further relief as the Court deems appropriate.

## COUNT IV
### Equitable Estoppel

73. The allegations in paragraphs 1-72 are realleged and incorporated by reference.

74. Defendants represented to Plaintiff that he would be reemployed by the KCSO as a Deputy Marshall full time by March 2015, with his benefits retroactively restored. This representation induced Plaintiff to resign his employment as Captain, forego his post-termination hearing before the Kennebec County Commissioners, and refrain from exercising his First Amendment rights to make statements to the press.

75. Plaintiff relied upon Defendants' misrepresentations to his detriment because he neither obtained the benefit of the bargain, and Defendants' denied his request to

rescind his resignation and pursue his appeal to the Kennebec County Commissioners.

76. Plaintiff's reliance on Defendants' representations was reasonable in that the terms of the agreement were reached between Plaintiff's attorney and the County's attorney, and they were reduced to writing, yet still materially violated by the County.

WHEREFORE, Plaintiff requests the following relief:

A. Enter judgment in Plaintiff's favor;

B. Enter injunctive relief ordering Defendants to reinstate Plaintiff to his original employment position;

C. Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon and reinstatement, or, in lieu thereof, front pay for future lost wages and benefits;

D. Award compensatory in an amount to be determined at trial and prejudgment interest thereon;

E. Award such further relief as the Court deems appropriate.

## COUNT V
### (Promissory Estoppel)

77. The allegations in paragraphs 1-76 are realleged and incorporated by reference.

78. Defendants County of Kennebec and the Sheriff's Office promised Plaintiff that he would be reemployed by the Sheriff's Office as a Deputy Marshall full time with his benefits retroactively restored by March 2015. This representation induced Plaintiff to resign his employment as Captain, forego his post-termination

hearing before the County Commissioners, and refrain from exercising his First
Amendment rights to make statements to the press.

79. Plaintiff justifiably relied upon Defendants' promises to his detriment because he
neither obtained the benefit of the bargain, and Defendants' denied his request to
rescind his resignation and pursue his appeal to the County Commissioners.

80. Plaintiff's reliance on Defendant's representations was justified in that the terms
of the agreement were reached between Plaintiff's attorney and the County's
attorney, and they were reduced to writing.

WHEREFORE, Plaintiff requests the following relief:

A. Enter judgment in Plaintiff's favor;

B. Enter injunctive relief ordering Defendants to reinstate Plaintiff to his original
employment position;

C. Award Plaintiff back pay for lost wages and benefits and prejudgment interest
thereon and reinstatement, or, in lieu thereof, front pay for future lost wages and
benefits;

D. Award compensatory damages in an amount to be determined at trial and
prejudgment interest thereon;

E. Award such further relief as the Court deems appropriate.

## COUNT V
### (Negligent Misrepresentation)

81. The allegations in paragraphs 1-80 are realleged and incorporated by reference.

82. Defendants County of Kennebec and the KCSO promised Plaintiff that he would
be reemployed by the Sheriff's Office as a Deputy Marshall full time with
retroactive restoration of his full benefits by March 2015.

83. Upon information and belief, Defendants did not intend to offer Plaintiff the full time position in March 2015, if the position was not funded by the State and/or they knew this full time position might not be funded by the State, yet they withheld this material information from Plaintiff.

84. Plaintiff justifiably relied on Defendants' representation that he would become a full time Deputy Marshall in March 2015 with retroactive restoration of his benefits, if he resigned his employment as Captain, gave up his rights to post-termination hearing before the Kennebec County Commissioners, and refrained from exercising his First Amendment rights to make statements to the press.

85. Plaintiff justifiably relied upon Defendants' promises to his detriment because he neither obtained the benefit of the bargain, and Defendants denied his request to rescind his resignation and pursue his appeal to the Kennebec County Commissioners.

86. Plaintiff exercised reasonable care and competence in obtaining the information about the exchange: he hired an attorney, who negotiated the terms of the agreement on his behalf and who reduced the agreement to writing.

WHEREFORE, Plaintiff requests the following relief:

A. Enter judgment in Plaintiff's favor;

B. Enter injunctive relief ordering Defendants to reinstate Plaintiff to his original employment position;

C. Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon and reinstatement, or, in lieu thereof, front pay for future lost wages and benefits;

D. Award compensatory damages in an amount to be determined at trial and

prejudgment interest thereon;

E. Award such further relief as the Court deems appropriate.

Respectfully Submitted:

DATED:     July 6, 2015

Maria Fox – Bar No. 9957
Counsel for Plaintiff Dennis Picard

MITTELASEN, LLC
85 Exchange Street, 4th Floor
Portland, ME 04101
(207) 775-3101
(207) 871-0683 (fax)
mfox@mittelasen.com

COMPLAINT -- 18